Susan **WOLFSON**, Plaintiff–Appellant,

v.

**MUTUAL BENEFIT LIFE INSURANCE COMPANY**, Defendant–Appellee.

No. 94–1849.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1994.

Decided March 30, 1995.

Rehearing Denied May 3, 1995.

Gary Lynn Hoffman, Omaha, NE, argued, for appellant.

Steven D. Davidson, Omaha, NE, argued (Cynthia A. Rismiller, on the brief), for appellee.

Before MAGILL, Circuit Judge, CAMPBELL,* Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Susan Wolfson appeals a series of orders staying her action to recover life insurance benefits under an ERISA plan. The district court[1] granted the stay after Mutual Benefit Life Insurance Company ("MBL") became the subject of an insolvency proceeding commenced under the New Jersey Life and Health Insurers Rehabilitation and Liquidation Act. *See* N.J.Stat.Ann. § 17B:32–31 to –91. This appeal requires us to apply the often-perplexing federal law of abstention to the equally complex subject of insurance company insolvency proceedings. Concluding on the facts of this case that the district court did not abuse its discretion, we affirm.

## I.

In 1974, MBL issued a group life insurance policy covering the employees of Dippy Donuts, Inc. Ms. Wolfson is the named beneficiary of Hildegard Kukawka under that policy. After Kukawka died in May 1989, MBL denied Wolfson's claim for $20,000 in death benefits on the ground that Kukawka had terminated her employ with Dippy Donuts more than one year before her death. In September 1990, Wolfson filed suit in Nebraska state court seeking $20,000 plus attorney's fees under Neb.Rev.Stat. § 44–359. MBL removed the case, and Wolfson filed an amended complaint asserting an ERISA claim to recover benefits due to her under an

employee welfare benefits plan. *See* 29 U.S.C. § 1132(a)(1)(B). The district court struck her claim for attorney's fees as preempted by ERISA.

In July 1991, the Superior Court of Mercer County, New Jersey, placed MBL into rehabilitation[2] at the request of the New Jersey Commissioner of Insurance, who was appointed Rehabilitator. The court enjoined further prosecution of "any action at law, suit in equity, special or other proceeding against [MBL]." Relying upon *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822 (8th Cir.1990), the district court then granted MBL's motion and "temporarily stayed" Wolfson's action "pending further order by the Superior Court of Mercer County, New Jersey."

In late 1991, the Rehabilitator sold MBL's group life insurance policies, including the Dippy Donuts policy, to Fortis Benefits Insurance Company. Fortis assumed MBL's contractual liabilities to policy beneficiaries such as Wolfson. Wolfson nevertheless did not file a separate action against Fortis because Fortis did not assume "extracontractual" liabilities such as Wolfson's claim for attorney's fees. Instead, between February 1992 and February 1994, Wolfson filed four motions for relief from the stay, plus another motion to amend her complaint to add Fortis as an additional defendant. The district court denied these motions on the ground that the stay continued to be appropriate in light of MBL's ongoing rehabilitation proceeding.[3]

---

* The HONORABLE LEVIN H. CAMPBELL, Senior United States Circuit Judge for the First Circuit, sitting by designation.

1. The HONORABLE WILLIAM G. CAMBRIDGE, Chief Judge of the United States District Court for the District of Nebraska.

2. Rehabilitation is an insurance insolvency proceeding analogous to a Chapter 11 reorganization under the Bankruptcy Code.

3. Neither the New Jersey court nor the district court has attempted to stay an independent action against Fortis as purchaser of MBL's group life policies. Wolfson's motion to add Fortis as a defendant to this action was an ineffective way to proceed against Fortis; indeed, so far as we can

tell from the district court record, that motion did not even advise the court what claim(s) she intended to assert against Fortis. Counsel for MBL stated at oral argument that he is also counsel for Fortis and that Wolfson's claim under the policy against Fortis is not time-barred. From our perspective, which of course may be imperfect, Wolfson's failure to proceed separately against Fortis seems ill-advised. Under ERISA, Wolfson has only a discretionary claim for attorney's fees incident to her benefits claim. *See* 29 U.S.C. § 1132(g)(1). No doubt all parties are nervous about how that issue would be resolved if Wolfson recovered policy benefits from Fortis, but that uncertainty is no reason for a court to stay consideration of an ERISA claim against the solvent Fortis if Wolfson should assert that claim.

On January 28, 1994, the Mercer County Superior Court entered an order approving MBL's Third Amended Rehabilitation Plan under the New Jersey Act. The Plan provides for a rehabilitation period that is scheduled to end on December 31, 1999. Wolfson now appeals the denial of her fourth motion to lift the stay, arguing that it is in effect a final order and that the district court has misapplied *Burford* abstention.

## II.

■ An order staying a civil action is interlocutory and usually nonappealable. *See Boushel v. Toro Co.*, 985 F.2d 406, 408 (8th Cir.1993). However, we agree with the parties that the stay order in this case is appealable for the two reasons stated in *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10–13, 103 S.Ct. 927, 933–36, 74 L.Ed.2d 765 (1983). First, the grant of an indefinite stay effectively leaves Wolfson out of federal court because the New Jersey court has ordered that all claims against MBL will be finally determined in the rehabilitation proceeding. Second, a federal court order abstaining because of a parallel state court proceeding that will likely resolve the dispute is appealable under the collateral-order doctrine. *See also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276–78, 108 S.Ct. 1133, 1136–38, 99 L.Ed.2d 296 (1988). Thus, we have 28 U.S.C. § 1291 jurisdiction.

## III.

■ The district court has abstained from exercising jurisdiction over Wolfson's civil action under ERISA because of MBL's pending state court insolvency proceeding. Abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989) (*"NOPSI"*). Determining when to invoke this narrow exception involves considerations of federalism, comity, and judicial administration explored in the Supreme Court's many and varied abstention cases. We review the district court's decision to abstain under the abuse of discretion standard, mindful that "such discretion must be exercised under the relevant standard." *Moses H. Cone*, 460 U.S. at 19, 103 S.Ct. at 938.

■ The district court invoked the abstention doctrine first enunciated in *Burford*, a case in which a federal court was asked to enjoin a regulatory decision of the Texas Railroad Commission. As the doctrine is now articulated, *Burford* abstention is appropriate in two extraordinary situations, when "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or when "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976).

The circuit courts have often considered whether to stay or dismiss a federal action because an insurer insolvency proceeding was pending in state court. *See generally* Michael A. Knoerzer, *Flagging the Obligation: Federal Courts' Abstention in Favor of State Rehabilitation and Liquidation Proceedings*, 28 Tort & Ins.L.J. 837, 843–52 (1993) (collecting cases). Most of these cases have upheld abstention under the second prong of *Burford*, reasoning that important state policies are furthered if litigation involving an insolvent insurer is consolidated in the state forum where the insurer's insolvency proceeding is being conducted. *See, e.g., Barnhardt Marine Ins., Inc. v. New England Internat'l Sur. of Amer., Inc.*, 961 F.2d 529 (5th Cir.1992); *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699 (10th Cir.1988) (collecting cases), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989); *Levy v. Lewis*, 635 F.2d 960 (2d Cir.1980). However, most of these cases have not dealt with claims for benefits under an insurance contract, and we are apparently the first circuit to consider whether a claim for insurance benefits under ERISA should be stayed because the insurer is the subject of a pending insolvency proceeding in state court.

Abstention is inherently a fact-specific inquiry. Though many prior decisions seem to approach the issue as though all insurer insolvency abstention issues are alike, we think that analytically there are at least three major categories of cases. The first category consists of suits by the insolvent insurer's policyholders or policy beneficiaries against third parties in which the defendant, often supported by the insurer's receiver, urges abstention because recovery by the plaintiff may reduce the receiver's ability to recover on behalf of the insurer's insolvency estate. Not surprisingly, abstention is usually (but not always) denied in such cases, particularly where a federal statutory claim is being asserted. The basic reason not to abstain in most such cases is that the state court insolvency proceeding, unlike the federal court, cannot afford plaintiff a remedy against a third party. *Compare Riley v. Simmons,* 45 F.3d 764 (3d Cir.1995), *and University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265 (3d Cir.1991), *with General Glass Indus. Corp. v. Monsour Medical Found.,* 973 F.2d 197 (3d Cir.1992), *and Hartford Cas. Ins. Co. v. Borg–Warner,* 913 F.2d 419 (7th Cir.1990).

The second category consists of cases in which the insolvent insurer or its receiver has asserted a claim in the federal action which, if successful, will enhance the insolvent's estate. In *Melahn v. Pennock Ins., Inc.,* 965 F.2d 1497, 1506–07 (8th Cir.1992), we refused to abstain because the receiver had elected to assert the claim outside the insolvency proceedings, and adjudication of that claim in federal court would neither interfere with the receiver's control of the insolvent nor frustrate in any way the state's interests in the insolvency proceeding. Cases in this second category have arisen in a variety of contexts. *Compare General Ry. Signal Co. v. Corcoran,* 921 F.2d 700 (7th Cir.1991), *with Garamendi v. Allstate Ins. Co.,* 47 F.3d 350 (9th Cir.1995). The abstention issue often turns on the relative importance to the state court insolvency proceeding of litigating a particular claim in that

proceeding. That can vary greatly, and therefore the abstention rulings in these cases quite properly defy generalization.

■ This case falls within our third broad category, claims by policyholders, policy beneficiaries, and other creditors against a now-insolvent insurer. The first issue in considering abstention in this situation is whether the state court insolvency proceeding provides a mandatory special procedure to adjudicate claims against the insolvent and then distribute the insolvent's inadequate assets among the various classes of successful claimants. *See Property & Cas. Ins. Ltd. v. Central Nat. Ins. Co. of Omaha,* 936 F.2d 319, 323–25 (7th Cir.1991). If there is such a concurrent state court procedure purporting to bind the federal court plaintiff, that brings into play what is generally referred to as the *Colorado River* abstention doctrine, which turns on "considerations of wise judicial administration ... conservation of judicial resources and comprehensive disposition of litigation" that are relevant whenever federal and state courts are contemporaneously asked to exercise jurisdiction over the same dispute. *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246.[4]

■ Because the New Jersey Act provides for the resolution of Wolfson's ERISA claim in MBL's insolvency proceeding, we conclude that both *Burford* and *Colorado River* abstention principles are relevant in resolving this appeal. Although some courts have compartmentalized these doctrines, the Supreme Court has cautioned that "the various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases." *NOPSI,* 491 U.S. at 359, 109 S.Ct. at 2513 (quotation omitted). In our view, the Supreme Court's abstention decisions are best viewed as delineating the considerations of federalism, comity, and judicial administration that may justify overriding the strong presumption in favor of exercising federal jurisdiction, not as setting out discrete mechanical tests. The considerations weighed

---

**4.** Our prior cases have distilled, with some inconsistency, the many considerations that are relevant in applying the *Colorado River* abstention doctrine. *See Darsie v. Avia Group Int'l, Inc.,* 36 F.3d 743, 745 (8th Cir.1994); *United States Fid. & Guar. Co. v. Murphy Oil USA, Inc.,* 21 F.3d 259, 263 (8th Cir.1994).

in each branch of abstention are not mutually exclusive, and courts should not limit the abstention inquiry to whether the case at bar fits neatly into the most analogous line of prior cases.

■ Taking both *Burford* and *Colorado River* principles into account, we agree with the district court that this is an appropriate case for federal court abstention for the following reasons.

1. Like the state court proceeding at issue in *Colorado River*, the state court conducting MBL's rehabilitation proceeding has jurisdiction over property, MBL's inadequate pool of assets. As in most States, New Jersey has a complex statutory regime to marshal the assets of insolvent insurers for the protection of policyholders and the insuring public. Federal courts with concurrent jurisdiction over the insurer's assets defer to such state court insolvency proceedings. *See Penn General Cas. Co. v. Pennsylvania*, 294 U.S. 189, 197–99, 55 S.Ct. 386, 389–91, 79 L.Ed. 850 (1935). On the other hand, Wolfson has brought an in personam action in federal court seeking to establish a claim against the assets being administered by the state court. Such actions have traditionally gone forward unless the determination of that claim in federal court would compromise the state court's administration of the corpus. *See Princess Lida v. Thompson*, 305 U.S. 456, 466–67, 59 S.Ct. 275, 280–81, 83 L.Ed. 285 (1939).

2. Exercise of the federal court's concurrent jurisdiction in this case will compromise the State's interest in MBL's successful rehabilitation. Claims litigation is a major ongoing expense of a solvent insurer. Reducing and deferring those expenses in an insolvency proceeding can greatly assist rehabilitation. For example, in this case, MBL's Rehabilitator was able to sell its group life insurance book of business to Fortis, including pending claims. If lawsuits such as Wolfson's have been stayed, that sale should enable the estate to avoid significant litigation expense. *Cf. Hartford*, 913 F.2d at 426–27. Thus, while "piecemeal litigation" is a fact of life for solvent insurers, the efficient adjudication and satisfaction of claims against an insolvent insurer is best achieved in a single comprehensive proceeding.

■ 3. Wolfson has asserted a federal statutory claim. This is normally a strong reason for the federal court not to abstain. However, in this case there is no reason to fear that the state court insolvency proceeding is ill-suited to resolving that claim. State courts have concurrent jurisdiction under ERISA. *See* 29 U.S.C. § 1132(e)(1). State courts are accustomed to interpreting insurance policies and resolving coverage disputes, the substantive issues underlying most ERISA benefits claims. The New Jersey insolvency statute provides for the allowance of both absolute and contingent claims, *see* N.J.Stat.Ann. §§ 17B:32–64 to –66, and for judicial review of claims denied by the Rehabilitator, *see* § 17B:32–68(b). And like most state laws governing insurer insolvencies, the New Jersey Act gives priority to the claims of policyholders and policy beneficiaries, *see* N.J.Stat.Ann. § 17B:32–71(a)(3). In this environment, federal courts can be confident that the parties ERISA primarily seeks to protect are also favored under state law, to the extent that the realities of an insurer's insolvency will permit. Thus, the insolvency proceeding provides the "timely and adequate state-court review" that is a prerequisite to abstention. *NOPSI*, 491 U.S. at 361, 109 S.Ct. at 2514.

■ 4. The relative progress of the federal action is another factor that is relevant in deciding whether to abstain. *See Moses H. Cone*, 460 U.S. at 21–22, 103 S.Ct. at 939–40. Here, MBL first sought the stay before trial of Wolfson's federal claim, when substantial litigation expense remained to be incurred. Moreover, if Wolfson is allowed to press her claim to judgment in the federal court, she must still look to the state proceeding for satisfaction of that judgment, and there is reason to doubt whether her federal judgment lien would enhance her claim in the insolvency proceeding. *See* N.J.Stat.Ann. § 17B:32–57. Thus, a decision not to abstain would squander judicial resources. By contrast, when insolvency occurs on the eve of oral argument of an insurer's appeal from a federal judgment in favor of the claimant, there is no good reason to stay completion of

the appeal. *See Fragoso v. Lopez*, 991 F.2d 878 (1st Cir.1993); *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822 (8th Cir.1990). In that situation, "the federal suit at issue is well enough along that its dismissal would itself constitute a waste of judicial resources and an invitation to duplicative effort." *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 569, 103 S.Ct. 3201, 3215, 77 L.Ed.2d 837 (1983).

 5. There is a strong federal policy of deferring to state regulation of the insurance industry, as reflected in the McCarran–Ferguson Act, 15 U.S.C. § 1012, the ERISA savings clause, 29 U.S.C. § 1144(b)(2)(A), and the exemption of insurance companies from the federal Bankruptcy Code, 11 U.S.C. § 109(b)(2), (d). *See generally Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 743–47, 105 S.Ct. 2380, 2391–93, 85 L.Ed.2d 728 (1985). The Supreme Court recently illustrated the breadth of that deference by holding that an Ohio statute giving policyholder claims higher priority in an insurer liquidation than claims of the United States is not preempted by the federal priority statute. *Department of Treasury v. Fabe*, —— U.S. ——, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).

6. Wolfson seeks money damages rather than equitable relief. Some courts have concluded that *Burford* abstention is only available for claims seeking equitable relief because the Supreme Court has noted the discretionary nature of equitable relief as a factor justifying *Burford* abstention. *See Garamendi*, 47 F.3d 350; *Fragoso*, 991 F.2d at 882; *University of Maryland*, 923 F.2d at 272. We think it unwise to make rigid distinctions between legal and equitable claims in the merged federal system, particularly for claims such as those under ERISA whose historical antecedents are unclear. *See* David L. Shapiro, *Jurisdiction and Discretion*, 60 N.Y.U.L.Rev. 543, 551–52 (1985). No doubt abstention is less apt to be appropriate when the federal plaintiff seeks money damages, but we do not read the Supreme Court's abstention jurisprudence as completely foreclosing abstention in money damage cases. The district court properly protected Wolfson's claim for monetary relief

under ERISA by staying rather than dismissing her federal action. *See Deakins v. Monaghan*, 484 U.S. 193, 203–10, 108 S.Ct. 523, 530–33, 98 L.Ed.2d 529 (1988).

Giving due regard to the strong presumption in favor of exercising federal jurisdiction, we conclude that the district court properly abstained in this case. Even if reduced to judgment, Wolfson's claim against MBL can only be satisfied in the state court insolvency proceeding. Therefore, staying the federal action avoids piecemeal litigation, conserves judicial resources, and furthers the cost-minimizing purposes of rehabilitation by allowing the state court to determine as well as satisfy Wolfson's claim. We recognize that prolonged delay of her claim works a hardship on Wolfson, but that delay is largely attributable to her strategic decision not to assert her claim against Fortis.

The order of the district court is affirmed.